UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SARAH S.,

      Plaintiff,

v.                5:20-CV-0300
                   (ML)
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.
_____

APPEARANCES:            OF COUNSEL:

OLINSKEY LAW GROUP        HOWARD D. OLINSKY, ESQ.
 Counsel for the Plaintiff
250 South Clinton Street, Suite 210
Syracuse, New York 13202

SOCIAL SECURITY ADMINISTRATION  LOUIS JOHN GEORGE, ESQ.
 Counsel for the Defendant        Special Assistant U.S. Attorney
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

MIROSLAV LOVRIC, United States Magistrate Judge

## MEMORANDUM-DECISION and ORDER

    Plaintiff Sarah S. ("Plaintiff") brings this action, pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Defendant") denying her application for Supplemental Social Security Income ("SSI"). (Dkt. No. 1.) This case has proceeded in accordance with General Order 18 of this Court, which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Currently before the Court are Plaintiff's motion for judgment on the pleadings (Dkt. No. 11), and Defendant's motion for judgment on the pleadings (Dkt. No. 14). For the reasons set forth below,

Defendant's motion for judgment on the pleadings is granted and the Commissioner's decision is affirmed.

I.     RELEVANT BACKGROUND

   A.     Procedural History

On September 12, 2016, Plaintiff filed a claim for Title II disability insurance benefits, alleging disability beginning May 1, 2015, which was later amended to May 9, 2016.  (Dkt. No. 8 at 20, 93, 132, 224.)  Plaintiff's claim was denied on November 9, 2016 (*id*. at 132), and Plaintiff filed a request for hearing on November 20, 2016 (*id*. at 158).  On December 21, 2018, Administrative Law Judge ("ALJ") Jude B. Mulvey issued an unfavorable decision.  (*Id*. at 17-34.)  On January 15, 2020, the Appeals Council denied Plaintiff's request for review.  (*Id*. at 5-11.)  On March 17, 2020, Plaintiff commenced this action.  (Dkt. No. 1.)

   B.     Factual Background

Plaintiff was born on September 19, 1978, making her 37 years old on the alleged onset date and application filing date, and 41 years old at the time of the unfavorable ALJ decision. (Dkt. No. 8 at 224.)  Plaintiff has past relevant work as a customer service assistant and operations manager.  (*Id.* at 242.)  Plaintiff has severe impairments due to anxiety, posttraumatic stress disorder ("PTSD"), and bipolar disorder.  (*Id*. at 22.)

   C.     The ALJ's Decision of December 21, 2018

Generally, in her decision, the ALJ made the following eleven findings of fact and conclusions of law.  (Dkt. No. 8 at 20-29.)  First, the ALJ found that Plaintiff met the insured status requirements for benefits under the Social Security Act through December 31, 2019.  (*Id.* at 22.)  Second, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 9, 2016.  (*Id*.)  Third, the ALJ found that Plaintiff's anxiety, PTSD, and bipolar disorder, are

severe impairments. (*Id*. at 22-23.) Fourth, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (*Id.* at 23-24.) Specifically, the ALJ considered Listings 12.04 (bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.08 (personality and impulse-control disorders). (*Id.*) Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> light work, as defined in 20 CFR 404.1567(b), except [she] can work at a goal oriented pace, instead of a fast paced production environment, with few, if any, work place changes. [Plaintiff] can perform work which does not require more than simple, short interactions with supervisors or coworkers. [Plaintiff] can work in proximity of co-workers and supervisors but the tasks performed should predominately involve working with objects rather than people. [Plaintiff] can tolerate a low level of work pressure defined as work not requiring multitasking, detailed job tasks, significant independent judgment, sharing of job tasks or no physical contact with the public.

(*Id*. at 24-27.) Sixth, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 27.) Seventh, the ALJ noted that Plaintiff was born on September 19, 1978, and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (*Id*.) Eighth, the ALJ noted that Plaintiff has at least a high school education and is able to communicate in English. (*Id*.) Ninth, the ALJ found that transferability of job skills is not material to the determination of disability because using the medical-vocational rules as a framework supports a finding that Plaintiff is "not disabled" whether or not Plaintiff has transferable job skills. (*Id*.) Tenth, the ALJ found that considering Plaintiff's age, education, work experience, and residual function capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.* at 27-28.) Eleventh, the ALJ found that Plaintiff has not been under a disability as defined by the Social Security Act 20 C.F.R. 404.1520(g), from May 1, 2015, until the date of her decision. (*Id.* at 28.)

3

### D.       Plaintiff's Motion for Judgment on the Pleadings

Generally, Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence because she failed to properly weigh the opinion of treating therapist Jane Fico and treating physician Steven Naprawa.  (Dkt. No. 11 at 14-22.)  More specifically, Plaintiff argues that the ALJ's reason for assigning little weight to the opinions of Dr. Naprawa and Ms. Fico—because the opinions are "based on the [Plaintiff's] reporting of symptoms"—is not supported by the record evidence because their medical source statements indicate that their opinions were based on Plaintiff's reported symptoms *and* "how symptoms appear to interfere with functioning observed in session." (*Id*. at 17.)  In addition, Plaintiff argues the opinion of Dr. Naprawa and Ms. Fico should have been given greater weight given their specialties in mental health and year-long treating relationship with Plaintiff.  (*Id*.)  Plaintiff also argues that the ALJ mischaracterized the evidence regarding Plaintiff's ability to remember, concentrate, and carry out simple instructions, including improperly concluding that because Plaintiff engages in hobbies like expressive writing and knitting, she does not suffer from concentration limitations, however Plaintiff testified that she is only able to engage in her hobbies for short periods of time. (*Id*. at 17-18.)  Moreover, Plaintiff argues that the ALJ cherry-picked evidence from the record regarding Plaintiff's ability to meet competitive standards and sustain an ordinary routine without special supervision, as opposed to considering the record as whole, which indicated that Plaintiff needs supervision to function, her mother drives her everywhere, and lacking the structure of rehab leaves Plaintiff feeling anxious and unsure how to spend her time.  (*Id*. at 19.)  Further, Plaintiff argues that the entirety of the record supports the conclusion that she becomes easily distracted and the ALJ improperly disregarded hundreds of pages of medical evidence including Dr. Naprawa and Ms. Fico's conclusion—based on one year of observations in therapy

sessions—that Plaintiff "has no useful ability to work in coordination with or proximity to others without being unduly distracted. (*Id*. at 19-20.) Plaintiff argues that the ALJ's failure to properly weigh the opinions of Dr. Naprawa and Ms. Fico was harmful error because the limitations they found "are potentially disabling" especially in light of the vocational expert's testimony that the maximum allowable off-task time was fifteen percent of the work day and Dr. Naprawa and Ms. Fico opined that Plaintiff would be off task more than twenty percent of the work day. (*Id.* at 20-22.)

### E.    Defendant's Motion for Judgment on the Pleadings

Generally, Defendant argues that substantial evidence supports the ALJ's RFC finding and evaluation of the opinions from Dr. Naprawa and Ms. Fico. (*See generally* Dkt. No. 14.) Defendant argues that Plaintiff did not challenge—and thus waived—the ALJ's findings that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with her own statements and the objective evidence. (*Id*.) However, Defendant argues that, even if Plaintiff had not waived this argument, the record supports the ALJ's finding. (*Id*.) Defendant argues that, for example, the ALJ contrasted Plaintiff's testimony that she has panic attacks and does not interact with others, with her ability to participate in interactive therapy and her report that, during her hospitalization in May 2016, she became friendly with and continued communication with an individual she met there. (*Id*.) Defendant acknowledges that Dr. Naprawa and Ms. Fico stated that their opinion was based on (1) Plaintiff's report of symptoms, and (2) how symptoms appear to interfere with functioning observed in sessions, but argues that the ALJ is not required to recite every piece of evidence that contributed to her decision. (*Id*.) Moreover, Defendant argues that the ALJ permissibly considered the consistency of Dr. Naprawa and Ms. Fico's opinion with the record evidence. (*Id.*) Defendant argues that,

for example, the ALJ noted that during the consultative examination, Dr. Long determined that Plaintiff was able to remember, concentrate, and carry out simple instructions. (*Id*.) In addition, Defendant argues that other record evidence—such as (1) mental status examinations conducted by Dr. Naprawa (a) in August and September 2016, and (b) from October 2017 through May 2018, and (2) examination notes from Shannon Spina, N.P. in September 2017—indicate that Plaintiff's attention and concentration were normal. (*Id*.) In addition, Defendant argues that the ALJ properly afforded the opinion of Dr. Fassler only partial weight because there is no indication that an acute exacerbation of Plaintiff's psychological symptoms would interfere with her ability to complete a regular workday or work week. (*Id*.) Defendant argues that Plaintiff improperly invites the Court to reweigh the evidence but that it is the ALJ's responsibility—not the Court's—to resolve conflicts in the evidence. (*Id*.) Finally, Defendant argues that the medical source statement from Dr. Naprawa and Ms. Fico is a check-box opinion with little explanation, which lends further support for the ALJ affording it little weight. (*Id*.)

## II.      APPLICABLE LEGAL STANDARDS

### A.      Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the court's review, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984); *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010) (Kahn, J.). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Featherly*, 793 F. Supp. 2d at 630.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

7

B.     **Standard for Benefits**[1]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2015). In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

---

[1]     The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

### C. Standard Regarding RFC Determinations

RFC is "what [the] individual can still do despite his or her limitations.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, 11-CV-1386, 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (D'Agostino, J.) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)); *accord Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Babcock v. Berryhill,* 17-CV-00580, 2018 WL 4347795, at *13 (N.D.N.Y. Sept. 12, 2018) (Sannes, J.); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016) (Dancks, M.J.).

In rendering a RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945; *see Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted) ("When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."); *Kirah D. v. Berryhill*, 18-CV-0110, 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019) (Hummel, M.J.) ("When evaluating a claim seeking disability benefits, factors to be considered by the ALJ include objective medical facts, clinical findings, the treating

physician's diagnoses, subjective evidence of disability, and pain related by the claimant."); *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (Hurd, J.) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990) (McAvoy, J.)) ("In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing, conclusory statements regarding plaintiff's capacities are not sufficient."). An ALJ must specify the functions a plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010) (Kahn, J.); *accord Stephens,* 200 F. Supp. 3d at 361; *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (Sharpe, J.)*; Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta*, 737 F. Supp. at 183). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, 17-CV-01266, 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (Dancks, M.J.) (citing SSR 96-8p, 1996 WL 374184, at *7).

> D. **Evaluating Medical Evidence**

Pursuant to the "treating physician rule"[2] set out in 20 C.F.R. § 404.1527(c), "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the

---

[2] For claims filed on or after March 27, 2017, a new set of regulations apply. These new regulations do "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 416.920c(a). Because Plaintiff's SSI application was filed prior to March 27, 2017, the treating physician rule applies as a matter of policy. HALLEX I-5-3-30(IV)(B), available at https://www.ssa.gov/OP_Home/hallex/I-05/I-5-3-30.html.

case record.'"  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  However, "the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, "'the ALJ must explicitly consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'"  *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).  However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527 is required.  *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran*, 362 F.3d at 31-32).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant.  20 C.F.R. §§ 404.1527(c)(1)-(6).

E.   **Evaluation of Symptoms**

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account.  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  The ALJ must carefully consider "all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'"  *Del Carmen*

*Fernandez v. Berryhill*, 18-CV-0326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016, the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use that term. SSR 16-3p, 81 FR at 14167. Instead, symptom evaluation tracks the language of the regulations. The evaluation of symptoms involves a two-step process. First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing *inter alia* 20 C.F.R. § 404.1529(a); *Genier*, 606 F.3d at 49) (alterations in original).

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superseded SSR 96-7p). The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any

measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination. *Cichocki*, 534 F. App'x at 76. However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination. *Id*.; *see also Del Carmen Fernandez*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)). "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'" *Cichocki*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d at 1040).

### III.  ANALYSIS

After carefully considering the matter, Defendant's motion for judgment on the pleadings is granted for the reasons stated in her memorandum of law. (Dkt. No. 14.) To those reasons, the Court adds the following analysis.

As an initial matter, "there is no requirement that the ALJ pick one RFC [opinion] and use that particular evaluation in its entirety." *Kikta v. Comm'r of Soc. Sec.*, 15-CV-0060, 2016 WL 825259, at *9 (N.D.N.Y. Feb. 9, 2016) (Baxter, M.J.) (citing *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)), *report and recommendation adopted by* 2016 WL 865301 (N.D.N.Y. Mar. 2, 2016) (Hurd, J.). Rather, "it is the ALJ's responsibility to 'choose between properly submitted medical opinions and other competent evidence to piece together an overall [RFC] assessment.'" *Robles v. Colvin*, 14-CV-1250, 2016 WL 814926, at *4 (N.D.N.Y. Feb. 29, 2016) (Hurd, J.) (quoting *Crofoot v. Comm'r of Soc. Sec.*, 12-CV-0521, 2013 WL 5493550, at *8 (N.D.N.Y. Sept. 30, 2013) (Sharpe, J.)). "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his [or her] decision, he or [she]

13

was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta*, 508 F. App'x at 56. In this case, the ALJ considered multiple medical opinions and treatment notes along with Plaintiff's testimony in reaching an RFC determination that was supported by substantial evidence, as set forth below.

In reaching the RFC determination, the ALJ considered the medical source statement from Plaintiff's mental health treatment providers Jane Fico, LCSW, and Dr. Steven Naprawa, who treated Plaintiff from October 27, 2017, through August 3, 2018. (Dkt. No. 8 at 26, 445-492, 589-591.) Dr. Naprawa and Ms. Fico opined that Plaintiff is unable to meet competitive standards in

> Remembering work-like procedures, understand and remember very short and simple instructions, carry out very short and simple instructions, maintain regular attendance and be punctual within customary, usually strict tolerances, sustain an ordinary routine without special supervision, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and respond appropriately to changes in a routine work setting.

(Dkt. No. 8 at 590.) In addition, Dr. Naprawa and Ms. Fico opined that Plaintiff has no useful ability to function in the following areas:

> Maintain attention for two hour segment, work in coordination with or proximity to others without being unduly distracted, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, deal with normal work stress, travel in unfamiliar place, and use public transportation.

(Dkt. No. 8 at 590.)

The ALJ assigned little weight to the opinion of Dr. Naprawa and Ms. Fico because she found that their opinion was not supported by the record and was based on Plaintiff's reporting of symptoms. (Dkt. No. 8 at 26.)

14

Plaintiff argues that substantial evidence does not support the ALJ's contention that she is able to remember, concentrate, and carry out simple instructions. (Dkt. No. 11 at 17-18.) However, Dr. Naprawa's treatment notes from Plaintiff's visits on October 27, 2017, December 20, 2017, February 21, 2018, April 18, 2018, May 31, 2018, and August 3, 2018, state that Plaintiff's attention/concentration was normal, her memory was intact, her thought process was "logical and organized, goal directed," and her thought content was reality based. (Dkt. No. 8 at 445-46, 456-57, 466-67, 471-72, 480-81, 489-90.)

Plaintiff also argues that the ALJ mischaracterized the evidence by pointing to Plaintiff's hobbies such as expressive writing or knitting to support the decision that Plaintiff does not suffer from concentration limitations because Plaintiff testified that she could only do those activities for short periods of time. (Dkt. No. 11 at 18.) However, as Defendant identified, substantial evidence supports the ALJ's finding that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with her own statements and the objective evidence. (Dkt. No. 8 at 22.) In addition, Ms. Fico's treatment notes state that for leisure/recreation, Plaintiff engaged in crafts, reading, art, and yoga, but did not indicate any limitations with respect to these activities. (Dkt. No. 8 at 450, 485.)

In addition, Plaintiff argues that substantial evidence does not support the ALJ's conclusion that Plaintiff did not require special supervision. (Dkt. No. 11 at 19.) However, Dr. Naprawa's treatment notes from Plaintiff's visits on October 27, 2017, December 20, 2017, February 21, 2018, April 18, 2018, May 31, 2018, and August 3, 2018, state that Plaintiff had good insight and judgment and that she "understands the risks and benefits of treatment and has capacity to make informed medical decisions." (Dkt. No. 8 at 447, 457, 467, 472, 481, 490.) Moreover, Dr. Naprawa's treatment notes from October 27, 2017, December 20, 2017, February

15

21, 2018, April 18, 2018, May 31, 2018, and August 3, 2018, state that Plaintiff, "[v]oice[d] understanding, reviewed dosing and directions and she understood." (Dkt. No. 8 at 447-48, 458, 468, 473, 482, 491.)

Finally, Plaintiff argues that substantial evidence does not support the ALJ's conclusion that Plaintiff was not disruptive or distracted. (Dkt. No. 11 at 19-20.) However, Dr. Naprawa's treatment notes from Plaintiff's visits on October 27, 2017, December 20, 2017, February 21, 2018, April 18, 2018, May 31, 2018, and August 3, 2018, state that Plaintiff had average impulse control. (Dkt. No. 8 at 447, 456, 466-67, 471, 480, 489.) In addition, Dr. Naprawa's treatment notes from December 20, 2017, February 21, 2018, April 18, 2018, May 31, 2018, and August 3, 2018, state that Plaintiff did not exhibit any manic/hypomanic, inattentive, or hyperactive symptoms. (*Id*. at 456, 466, 471, 480, 489.) Moreover, Dr. Naprawa's treatment notes from Plaintiff's visit on October 27, 2017, states that Plaintiff's demeanor/behavior was "calm, pleasant, [and] cooperative" (*id*. at 446) and his treatment notes from December 20, 2017, February 21, 2018, April 18, 2018, May 31, 2018, and August 3, 2018, state that Plaintiff's demeanor/behavior was "pleasant, cooperative." (*Id.* at 456, 466, 471, 480.)

As a result, the ALJ properly evaluated the opinion of Dr. Naprawa and Ms. Fico, and Plaintiff has not demonstrated prejudicial error warranting remand.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: August 20, 2021
Binghamton, New York

_____
Miroslav Lovric
U.S. Magistrate Judge